|107   23<br>r211s   9|

</div>

## Chicago & Eastern Illinois R. R. Co. v. E. H. Burridge.

1. PRACTICE—*Where Court Should Refuse an Instruction to Find for the Defendant.*—Where there is any evidence in the case tending to sustain the cause of action, the court should refuse to instruct the jury to find for the defendant.

2. INSTRUCTIONS—*Duty of One Receiving Injury as to Care Bestowed in Treatment.*—An instruction to the jury that it was the duty of the plaintiff to employ such doctor or doctors for the treatment of his injuries as ordinary prudence in his situation at the time of the injury and thereafter required; and to use ordinary judgment and care in doing so, and to select only such doctor as was of at least ordinary skill and care in his profession; but the law does not make him an insurer in such case that the doctor will be guilty of no negligence, error in judgment or want of care, and where such errors or mistakes occur in the treatment, the injured party using ordinary care, the injury resulting from such mistakes is properly regarded as part of the immediate and direct damages resulting from the original injury, states a correct principle of law.

3. DUE CARE—*A Question of Fact for the Jury.*—Whether a party has acted as a reasonably careful prudent person would have acted under the circumstances, is a question of fact for the jury.

Trespass on the Case, for personal injuries. Appeal from the Circuit Court of Marion County; the Hon. WILLIAM M. FARMER, Judge presiding. Heard in this court at the August term, 1902. Affirmed. Opinion filed March 2, 1903.

**Statement.**—This is an appeal from a judgment of the Circuit Court of Marion County, for the sum of $4,000, in favor of appellee against appellant, for injuries received by appellee through the claimed negligence of the servants of appellant. The accident occurred on the 7th of February, 1901, in appellant's railroad yard in the city of Salem. Before that date appellee had shipped a stock of goods from Humboldt, Tennessee, by the Mobile and Ohio Railroad, and appellant's railroad, to the city of Salem.

The car in which the property was shipped was filled full of goods and articles of various kinds, and it arrived at Salem in the evening of February 6th. Among the articles shipped were two iron safes, one about six feet in height, three feet in width and two and a half feet deep, and weighed about 4,000 pounds. The other safe was a smaller one and weighed 1,000 pounds. One of the legs or rollers of the smaller safe had been broken before or at the time of shipment.

By the terms of shipment, appellee was to unload the goods on their arrival at Salem.

The car was set on a side track near to a public road east of the main track of the railroad, at the usual place for unloading, and appellee having received notice of the arrival of the car, on the morning of the day after its arrival, went with a drayman and another person as helper, to the car for the purpose of receiving the goods, and began unloading them on the dray. Among the goods were show-cases, glass ware and household stuff that needed attention and careful handling.

Shortly after the time they began to unload the goods, a local freight train came in from the north, bound south, and stopped to do some switching by taking out cars standing on the track and placing them in the south-bound train.

Appellee and one of his men were in the car containing

the goods and with the drayman had unloaded from the car two dray loads of them. Appellant's servants engaged in the switching knew that appellee was in the car, in charge of his goods, and had a man there besides the drayman to assist in unloading them.

It appears from the evidence that on account of the location of the cars to be taken out and attached to the southbound train, a considerable switching of the cars back and forth, including appellee's car, was necessary to be done, and that appellant's servants were not obstructed by appellee or his helper or drayman in doing it, although the car of goods had been placed by appellant's servants in the usual place for unloading.

While appellee and his assistant were in the car awaiting the switching to be finished so they might unload the balance of the goods, and while the car was then some distance from the spot where it was originally placed, and without appellee's knowledge, as claimed by him, that the car was to be changed from the place where it then was, to another place, the train or a portion of it was run with great force and violence, as claimed by appellee, against the car appellee and his goods were in, overturning the small iron safe upon appellee, seriously injuring him, so that he will probably never fully recover.

L. M. Kagy, attorney for appellant; W. H. Lyford, of counsel.

J. S. Stonecipher and Wood & Elmer, attorneys for appellee.

Mr. Justice Bigelow delivered the opinion of the court.

A number of errors are assigned on the record, one of which is, the refusal of the court to peremptorily instruct the jury, at the close of plaintiff's evidence, to find for the defendant; and another is, the refusal of the court to give the same instruction at the close of all the evidence in the case.

The Supreme Court in Lusk v. Throop, 189 Ill. 127, said:

" The trial court did not err in refusing to instruct the jury to find for the appellants, if there was any evidence in the case tending to sustain the cause of action," citing Boyce v. Tallerman, 183 Ill. 115. See also Lake Shore & M. S. R. R. Co. v. Ouska, 151 Ill. 232, and cases there cited.

That there is substantial evidence in this record to sustain plaintiff's cause of action as set forth in the two counts of the declaration, on which the case was tried, admits of no doubt whatever, and the court properly refused to give each instruction.

Two other errors assigned are, in admitting improper evidence on behalf of the plaintiff, and in rejecting proper evidence on behalf of the defendant. To make certain what the exceptions to the rulings of the court were, appellant's counsel refer us to " pages 26, 34, 36, 43, 61, 62, 64, 68, 69, 72, 86, 89; 93, 100, 105, 109, 110, 111, 113, 122, 177, 178, 179, 180, of the abstract." To notice these several rulings in detail, as appellant's counsel seem to desire should be done, would result in extending this opinion to an inordinate length; we therefore content ourselves by saying, we have carefully read and considered each and all of the rulings pointed out, as above stated, and find ourselves unable to say that the rulings or any of them, are so far incorrect as to require a reversal of the judgment.

Another error assigned is, " The court below erred in refusing to strike from the record improper evidence offered on behalf of the plaintiff." This error is but a restatement of the error in admitting improper evidence offered by appellee, and is already disposed of.

Another error is that " The court erred in rendering a judgment in favor of the plaintiff and against the defendant." This seems to be a singular error to be assigned, in a case tried by a jury, a verdict returned and a motion for a new trial overruled, for how can it be said that the court has erred in rendering judgment on the verdict, which the law requires the court to render as a judicial duty ? If the verdict is right and judgment follows the verdict, rendering the judgment can not be error, and it is useless to assign it as such.

The court gave to the jury, at the request of appellee, seven instructions, and these are assigned for error, nominally in a body, but as each is separately argued, they will be so treated, so far as it may seem advisable to do so.

Counsel admit that the first instruction states a correct proposition of law, but the objection to it is, "its peculiar phraseology." So long as it contains a correct proposition of law that the jury could not fail to understand, we can not stop to inquire about the correctness of its literary construction, since it is only the correctness of its legal construction that we are concerned with. It could not have misled the jury, and there was no error in giving it.

Appellee's second instruction, which it is claimed by appellant is grossly erroneous, is as follows:

2. "You are instructed that where a carrier of freight on its arrival at the place of destination, places the car containing such freight upon one of its side tracks, and notifies, invites or requires the consignee to remove such freight from its car, that the owner, who in pursuance of such notice, invitation or request proceeds to remove such freight from such car, while so engaged has the right to rely upon the carrier to exercise reasonable care not to injure him while so employed; and if you believe from the evidence in this case that the plaintiff was notified, invited or requested by the defendant to remove certain freight from a car placed by it upon one of its side tracks for the purpose of enabling the plaintiff to remove his goods therefrom, that while plaintiff was in said car for the purpose of so removing his freight, and in the exercise of due care for his own safety, the defendant's servants in charge of one of its freight trains, either knowing of plaintiff's presence in said car, or the circumstances being such that they ought in the exercise of ordinary care on their part to have known of his presence therein, thereafter negligently ran into said car with such force and violence as to overturn a safe therein contained upon the plaintiff, thereby injuring him, then you should find the defendant guilty."

When the car that contained appellee's goods arrived at its destination and was placed next to a public road where goods shipped as his were, were usually unloaded, and he was notified by appellant to unload and take them away,

and appellee and the men he had employed to assist him, had begun to unload the goods, none of them were trespassers, to which appellant owed no duty, except to avoid willfully injuring them.

They were rightfully in the car before the train from the north that did the injury arrived at Salem, and so long as they were diligent in unloading the goods, they had a right to remain in the car. But whether appellee's right to the car and to have it remain at the place where it was being unloaded, was superior to the right of appellant to take the car away, except in case of an emergency greater than ordinary switching of cars, is a question not necessary to be determined in this case.

But it is insisted by appellant's counsel that appellee was not in the car for the purpose of unloading his goods, and should have gotten out of it before it was switched away from the place where the unloading began. We are unable to concur in this view of the matter. Appellee lost no right by remaining in the car and would have lost none had he remained where he was all day, if he had been prevented from unloading the car by the switching being done, which he clearly was.

The door of the car was open all of the time while the switching was being done, and it was not done to accommodate appellee. It was but natural that appellee should remain in the car, to see that none of his goods were lost or stolen or in anywise injured, if he could avoid it, and the fact that he remained in the car when it was being switched around to various points, instead of being evidence that he was reckless as to his own safety, seems to us to be evidence of a contrary nature.

There was no error in giving the instruction—not even if it be conceded that appellee knew the car which struck the car he was in, was coming down to couple to his own car, and that he had also been advised by a brakeman that he had better alight from the car—matters which appellant insists are true, but the truth of which appellee emphatically denies. The various couplings of the cars that had

been made before the one when appellee was injured, were, as appellee testified (and no one disputed him), easy and gentle and had done no harm, and he had no reason to expect the last coupling would be different from the former ones.

It can not be said the danger was imminent, when it was fully under the control of the servants of the appellant, who could and should have arrested it before the cars came together.

This is not a case where the injured person intentionally or carelessly placed himself in danger, as counsel for appellant seems to assume it to be.   But it is argued that as the drayman saw or heard the car approaching, and stepped from the car being unloaded, onto his dray, and thus escaped injury, that it was appellee's duty to have done as the drayman did, and since he did not do so he was not exercising ordinary care for his own safety.

The drayman did not step out of the car because of any personal danger to himself, but because he feared his horses might run away unless kept under personal control.

The position and surroundings of the drayman and appellee were not sufficiently analogous so that it can be said the conduct and action of the drayman should have been the conduct and action of appellee.

What has already been said as to appellee's second instruction will apply to appellee's third and fourth instructions and no error was committed in giving them.

Appellee's fifth instruction, which appellant's counsel characterizes as " vicious," is as follows :

" One who sees his property in peril, may protect it so long as he can do so without exposing himself to peril and injury by failure to attend his conduct by the exercise of ordinary care and caution for his own safety."

Appellant's counsel says of this instruction :

" The fifth instruction told the jury that one who sees his property in peril may protect it by failure to attend his conduct by the exercise of ordinary care and caution so long as he can do so without exposing himself to peril and injury."

The instruction as it stands, speaks for itself.

Appellee's sixth instruction, which counsel for appellant insists is erroneous, is as follows:

" You are instructed that it was the duty of the plaintiff to employ such doctor or doctors for the treatment of his injuries as ordinary prudence in his situation at the time of the injury and thereafter required; and to use ordinary judgment and care in doing so, and to select only such doctor as was of at least ordinary skill and care in his profession; but the law does not make him an insurer in such case that the doctor will be guilty of no negligence, error in judgment or want of care, and where such errors or mistakes occur in the treatment (the injured party using ordinary care) the injury resulting from such mistakes is properly regarded as part of the immediate and direct damages resulting from the original injury."

This instruction states the law correctly and we can not disregard the rule as laid down in Pullman Palace Car Co. v. Bluhm, 109 Ill. 20, even though counsel think it unsound.

The seventh and last instruction of appellee, given, relates solely to the measure of damages, and we do not understand counsel as seriously contending the instruction is erroneous.

Appellant asked the court to give twenty-two instructions, of which three were given as asked, six modified and given, and the remainder were refused. The modification and refusal of the nineteen instructions and each of them, is assigned as error, and fully argued. While to go through and give in full, or even the substance of the instructions as asked, with the reasons urged why the refusal to give them was erroneous, and the replies to the reasons, would not be a task we could not have performed, yet we feel safe in saying that it would be a useless task that no court should undertake. We have fully examined all of the instructions on both sides of the case, and find the jury were fully and correctly instructed as to the law of the case.

Nearly every personal injury case turns on some one point in it and appellant's counsel at the beginning of their brief well say:

" In this case, the important question is, whether the

appellee used proper care and caution in getting himself in the situation in which he was at the time he received the injury under the circumstances then surrounding him."

Counsel seem to assume that appellee wrongfully and needlessly put himself in a dangerous place, and the injury he met with was the consequence of his own fault.

All must concede that when the car was placed by appellant in the regular place for unloading, and appellee with his copartner and drayman, went into the car and began unloading the goods, that appellee was rightfully there. This being so, we look in vain for any affirmative act of appellee that changed his relation toward appellant. But it is claimed by counsel, that while appellee did no affirmative act that contributed to the injury received, he omitted to do an act that it was his duty to have done, viz., to have alighted from the car to the dray as the drayman did, and thus put himself out of the reach of the overturned safe.

Whether appellee acted as a reasonably careful, prudent person would have acted under the circumstances, was a question of fact for the jury to determine. When we take into consideration the inference that may be properly drawn from the evidence, that appellee, after first going into the car and assisting in the unloading two dray loads of goods, remained there while it was being switched hither and thither an uncertain number of times, as well as uncertain distances, appellee all of the time expecting and having reason to believe that the car would at almost any moment be returned to the spot from which it was taken, so the balance of the goods could be unloaded and taken to appellee's store, we can not wonder that appellee, or any other person situated as he was, might well have thought himself safer from being injured than he would be on the ground, with cars constantly being switched around him.

The final error assigned is that the damages are excessive. Some of appellee's witnesses testified that the portion of the train that was pushed against the car that appellee was in, came with great violence, and the result

of the impact proves that the testimony was at least not entirely untrue, for had it been, the safe would not have been overturned against appellee, thus rendering him a cripple for life, to say nothing of the suffering he underwent from a crushed ankle.

It was not error in the Circuit Court in refusing to grant appellant's motion for a new trial for the reason that the damages were excessive.

We fail to discover any error in the record for which the judgment should be reversed, hence it is affirmed.