## WILLIAM D. BOYCE

### *v.*

## GODFREY A. TALLERMAN.

*Opinion filed December 18, 1899.*

1. APPEALS AND ERRORS—*Supreme Court cannot review facts in suits at law.* The Supreme Court cannot review the facts on appeal from or writ of error to the Appellate Court to review judgment at law.

2. SAME—*peremptory instruction for defendant is properly refused if evidence tends to prove case.* An instruction to find the defendant not guilty in an action of tort is properly refused if there is evidence tending to support the allegations of the declaration.

3. NEGLIGENCE—*when owner of building is liable for defective smoke-stack.* The owner of a building who has, under written agreement, extended an adjoining smoke-stack above the top of his building in consideration of joint use thereof, is liable for injuries caused by the defective construction or fastening of the extension.

4. DAMAGES—*whether damages are excessive is not a question for the Supreme Court.* The question whether damages awarded in an action for negligence are excessive is settled in the Appellate Court.

5. TRIAL—*when motion in arrest is properly overruled.* In an action for negligence in not properly fastening a smoke-stack, a motion in arrest of judgment against the defendant, based upon the failure of the declaration to allege notice of the defect to the defendant or a request to him to fasten the stack, is properly overruled.

*Boyce v. Tallerman*, 83 Ill. App. 575, affirmed.

APPEAL from the Branch Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. JOHN BARTON PAYNE, Judge, presiding.

This was an action brought in the superior court of Cook county by Godfrey A. Tallerman, against the National Electric Construction Company, a corporation, the University Club, a corporation, and William D. Boyce, to recover for injuries received by Tallerman on the 20th day of November, 1894, while engaged in his regular duties in the abstract office of Handy & Co., at 94 Washington street, Chicago, by pieces of glass falling from the sky-light about eighteen feet above his head. These

pieces of glass were knocked from the sky-light by a section of an iron smoke-stack which had fallen or been blown down upon the sky-light.

The smoke-stack from which the section just referred to fell, was built at the rear of the adjacent buildings, known as Nos. 112, 114, 116 and 118 Dearborn street. What is known as the "Boyce Building" comprises Nos. 112 and 114, and what is known as the "University Club Building" comprises Nos. 116 and 118. The fee of the ground upon which the Boyce building stands is owned by Julia Sherman. The fee of the ground upon which the University Club building stands belongs to the Story estate. The two buildings are owned by William D. Boyce and the University Club, respectively. The smoke-stack in question was erected on the dividing line between these two pieces of property. One-half of its base (the northern half) rests upon the property of Julia Sherman and the other half of its base rests upon the property belonging to the Story estate. The stack extended upward to a height of about one hundred and seventy-eight feet. From its base to the top of the University Club building, which is eight stories in height, the stack stands in a niche between the two buildings, so that on its north and half of its east side it is incased by the brick wall of the Boyce building, while on its south and half of its east side it is incased by the brick wall of the University Club building. Its west side is on the western line of this property, and is exposed. The stack was attached to the University Club building as far as that building went, and for the remainder of its height it was attached to the Boyce building, which is four stories higher than the University Club building. The University Club had leases of all the ground upon which this stack stood, the southern half of which it leased from the Story estate for a term of ninety-nine years and the northern half of which it leased from Boyce, the appellant, who obtained his rights under a ninety-nine year lease from

Julia Sherman. By the terms of this lease from Boyce to the University Club that club was to hold this small piece of ground for the remainder of the ninety-nine years for which Boyce had originally leased it, so that this property would, at the expiration of the University Club's lease, revert directly back to Julia Sherman. All of the leases here referred to were made before the erection of the smoke-stack in question and before the erection of the Boyce building. The smoke-stack was erected to the height of the University Club building before the Boyce building was erected. The horizontal dimensions of the stack were about three feet by five feet, giving a capacity of flue equal to 2160 square inches. By the conditions of the lease from Boyce to the University Club of the northern half of the ground upon which the stack stood, Boyce reserved the right to use a part of the smoke-stack as a flue for his building, to the extent of a 150 horse-power flue, whenever he should erect a building on the adjacent premises, upon which he afterwards did erect the Boyce building.

The National Electric Construction Company was a corporation engaged in the business of generating heat, light and power, and furnishing the same for a consideration to the neighboring buildings. Before the erection of this smoke-stack the electric company agreed with the University Club to rent the basement of its building (the University Club building) and carry on its business therein, but in order to do so it was necessary that a stack of such dimensions as the one in question should be erected, the business of the said electric company requiring a flue for about 375 horse-power engines, or about 1280 square inches flue capacity. As a part consideration for its right to occupy the basement of the University Club building the National Electric Company agreed to and did erect the smoke-stack in question up to the height of the University Club building, fastening the stack to that building, and subsequently, and at the time of the erection of

the Boyce building, the electric company, acting under its agreement with Boyce, increased the height of the stack to the height of the Boyce building, fastening this upper portion of the stack to the Boyce building. This piece of work was done while the building was in the hands of Clark, the construction contractor who erected it for Boyce. After the stack had thus been erected, and after the erection of the Boyce building but before the happening of the injury complained of, Boyce took possession of the Boyce building and began making use of his flue privilege in the stack in question, and was doing so at the time of the injury. The electric company was occupying the basement of the University Club building, and was also using this smoke-stack at the time of the injury. Appellant admits that appellee was injured, but as to the extent and consequence of this injury no admission is made, and admits that appellee was without fault in the premises.

The cause was tried before a jury in the superior court, who returned a verdict for plaintiff and assessed his damages at $2000. A motion for a new trial was overruled and judgment rendered on the verdict in favor of plaintiff, which was affirmed by the Appellate Court, and the defendant, William D. Boyce, brings the case to this court on appeal and asks for a reversal of the judgment of the Appellate Court.

JOHN A. POST, and O. W. DYNES, for appellant.

EDWARD B. BURLING, for appellee.

Mr. JUSTICE CRAIG delivered the opinion of the court:

Appellant has assigned several errors, among which is that the verdict is against the weight and preponderance of the evidence. This court has held in numerous cases that under section 90 of the Practice act (Hurd's Stat. 1897, p. 1218,) the judgment of the Appellate Court

is final and conclusive as to questions of fact, and will not be reviewed on appeals from and writs of error to the Appellate Court. *Capen* v. *DeSteiger Glass Co.* 105 Ill. 185; *Legnard* v. *Rhoades,* 156 id. 431.

It is also assigned for error that the court erred in refusing to give the written instruction, offered by the defendant at the close of all the evidence, to find the defendant not guilty. The court did not err if the evidence tended to prove the allegations of the declaration. In *Chicago and Northwestern Railway Co.* v. *Dunleavy,* 129 Ill. 132, this court said (p. 140): "A prayer for an instruction of this character is in the nature of a demurrer to the evidence, and is equivalent to an admission upon the record of every fact and every conclusion in favor of the opposite party which the evidence conduces to prove,—in other words, every fact which the jury might have inferred from it in favor of such opposite party. Such instruction should not, therefore, be given except where there is a substantial failure of evidence tending to prove the plaintiff's cause of action or to prove some material fact necessary to establish it. The instruction asked was based upon the theory that there was a substantial failure of evidence tending to prove the negligence charged against the defendant. In considering the propriety of said instruction we have nothing to do with any question as to the preponderance of the evidence or the credibility of the witnesses, or the force to be given to the evidence having a tendency merely to impeach their veracity. The only question is, whether any evidence was given which, if true, would have tended to support a verdict for the plaintiff."

The declaration alleges, in substance, that the defendants, before the 20th day of November, 1894, had erected a large smoke-stack, of the height of about one hundred and fifty feet, in the rear of, adjoining and part of the buildings known and described as Nos. 112-114 Dearborn street and 116-118 Dearborn street, in the city

of Chicago, in the county of Cook and State of Illinois,
and also a few feet distant from the rear of the building
known as No. 94 Washington street, in said city, which
said smoke-stack was on the 20th day of November, 1894,
and for a long space of time prior thereto, in the posses-
sion, control and under the operation and management
of the said defendants, and although it was the duty
of the said defendants to keep and maintain the smoke-
stack in safe condition and proper repair, and to brace,
tie, anchor or otherwise support or sustain the same to
prevent the same from falling, so that persons occupying,
employed or transacting business in buildings near to
said stack should not be injured, yet the defendants, not
regarding their duty or using due care in that behalf, did
not keep the smoke-stack in safe condition and in proper
repair, but did fail then and there to have the same prop-
erly and safely erected, tied, anchored, braced or other-
wise supported or sustained, and to keep the same in
proper repair and in safe condition, but, on the contrary
thereof, on the said 20th day of November, 1894, negli-
gently suffered and allowed the smoke-stack to become
and to be in an unsafe condition and to become out of
repair, and unsupported or properly anchored, tied or
braced, so as to keep it from falling, by means whereof,
on said 20th day of November, 1894, the said smoke-
stack fell with great force upon the roof of the rear
part of a certain building then and now known as No. 94
Washington street, in said city, the roof of the rear of
said building known as No. 94 Washington street in said
city being then and there covered with heavy glass, and
in the rear of which building, known as No. 94 Washing-
ton street, said plaintiff was then and there, in the exer-
cise of due care and caution, engaged in the transacting
of his business, and the plaintiff was then and there, by
the falling of said smoke-stack upon the glass roof of
the said building known as No. 94 Washington street, as
aforesaid, struck upon his head and body with a large

number of pieces of said glass roof so broken by the fall of said smoke-stack, as aforesaid, and thereby the scalp of the head of said plaintiff was then and there severely cut, his back severely cut, bruised and injured, and his right hand cut, wounded and injured, and he thereby became sick, sore, wounded and disordered, etc.

The evidence introduced on behalf of the plaintiff established the following facts: That on the 20th day of November, 1894, a large steel smoke-stack stood at the rear end of the party wall between the University Club building and the Boyce building, on the west side of Dearborn street, in the city of Chicago; that the University Club building was eight stories high; that the smoke-stack stood in a niche built with reference to this stack, so that the west walls of the two buildings presented an unbroken surface with it; that the smoke-stack extended above the Boyce building about ten feet, and was fastened to it and the University Club building by metal bands; that there was a fastening at the top of the University Club building, which was about forty feet below the top of the Boyce building; that there was a steel band about two inches wide and about an eighth of an inch thick about half way up and about twenty feet from the roof of the University Club building, and at the top there were three heavy chains fastened to the exhaust pipe. It also appears from plaintiff's evidence that the defendant, Boyce, was the owner of the Boyce building; that this smoke-stack was used by Boyce for carrying away the smoke created in the basement of his building, where the heat and power for the building were furnished, and that he had an engineer and fireman in charge of the engine and boilers in the basement. It also appeared that the smoke-stack was used by the National Electric Construction Company, who leased the basement of the University Club building, and thus was used as a common smoke-stack of the two buildings, and was so used at the time it fell or blew down on the rear

of the building at that time occupied by the Title and Guarantee Company; that when the smoke-stack fell it struck the sky-light of this building, breaking the heavy plate glass, which fell to the floor, striking the plaintiff, who was employed in the room, and cutting his head and hand and injuring him severely in other parts of his body.

One of the plaintiff's witnesses testified that prior to November, 1894, when the accident occurred, he had observed the smoke-stack a number of times when the wind was blowing, and saw it sway considerably. W. L. Elliott, a mechanical and consulting engineer, who testified and described how the smoke-stack was fastened, was asked, from his experience as a mechanical engineer, whether the fastenings he had described were sufficient to safely secure such smoke-stack of the height he had described, (one hundred and seventy-eight feet,) and answered: "I should not think that the one about twenty or thirty feet above the University Club building was safe enough. The rest of them were all right."

This evidence tended to establish the allegations of the declaration that the smoke-stack was in an unsafe condition when it fell, and that some one was negligent. Was there evidence tending to show that Boyce, the defendant, was guilty of negligence? The evidence shows he was the owner of the Boyce building; that this smoke-stack was fastened to his building, and he was using it for the purpose of carrying off the smoke from his boilers in the basement of his building.

Appellant cites the general rule of a landlord's liability for failing to keep premises occupied in repair, from *Gridley* v. *City of Bloomington,* 68 Ill. 47, where the general rule and exception are stated to be (p. 51): "That the occupant, and not the owner, as such, is responsible for injuries received in consequence of a failure to keep the premises occupied in repair. * * * To this general rule the authorities recognize these exceptions: (1) Where the landlord has, by an express agreement between the ten-

ant and himself, agreed to keep the premises in repair, so that in case of a recovery against the tenant he would have his remedy over; then, to avoid circuity of action, the party injured by the defect and want of repair may have his action in the first instance against the landlord, but such express agreement must be distinctly proved. (See *City of Lowell* v. *Spaulding*, 4 Cush. 277; *Fisher* v. *Thirkell*, 21 Mich. 1; *Cheetham* v. *Hampson*, 4 Durn. & East, 318.) (2) Where the premises are let with a nuisance upon them, by means of which the injury complained of is received."

The agreement (Exhibit "A") introduced by defendant clearly establishes Boyce's liability under the first exception to this general rule. This agreement is dated June 6, 1891, between William D. Boyce, of the city of Chicago, and the University Club, a corporation, etc., and refers to party wall contracts between Boyce and the University Club and to agreements between former owners of the lots. It recites the agreement shall endure during the life of the leases under which the parties to the agreement are respectively possessed, (ninety-nine years,) and leases to the University Club the west thirty-two inches of the south thirty-six inches at the south-west corner of his lot, on which to erect this smoke-stack. The club agrees, in consideration of the lease, to erect or cause to be erected, partly upon the land so demised, a wrought iron pipe of at least 150 horse-power capacity. The agreement further provides, in its second clause: "The party of the second part further covenants and agrees to and with the party of the first part that he may, at any time after such stack shall have been erected and during the term of his demise, insert into said stack *and use for his own purposes,* until the end of the term hereby demised, a flue of 150 horse-power capacity. The party of the second part further covenants and agrees that the party of the first part shall at all times have the benefit of so much of the draft of said stack as *will enable him fully to use and enjoy his 150 horse-power flue aforesaid.* It is understood

by the parties hereto that all repairs and renewals of said stack are to be made by the National Electric Construction Company during the term of a ten-year lease which the party of the second part has made of its base- ment to said company, but it is covenanted and agreed by the parties hereto that after the lease to said National Electric Construction Company shall have expired, and before it shall have expired, if such construction com- pany *shall fail or go out of business, all repairs and renewals shall be made at the joint expense of the parties hereto.* Said parties shall pay, respectively, portions of the expense of any such repairs or renewals, proportioned to the num- ber of horse-power capacity in said stack actually used by them, respectively, at the time such repairs or renew- als become necessary. The party of the *first part* (Boyce) covenants and agrees *to carry up said stack at his own expense* to the height of any building which he may here- after erect upon his said premises."

By this agreement no rent was to be paid to Boyce, but he was to have the joint use of the smoke-stack. He agrees to carry it up, at his own expense, to the height of any building which he may hereafter erect upon his premises. The agreement recognizes that repairs will be necessary to the smoke-stack, and in case the National Electric Construction Company shall fail or go out of business, or after the leases shall expire, all repairs and renewals shall be made at the joint expense of Boyce and the University Club. Here is an express agreement be- tween the landlord and tenant to keep the smoke-stack repaired and renewed, and defendant, Boyce, comes with- in the foregoing exception to the general rule and the agreement establishes his liability to repair. Three other agreements were introduced in evidence by the defend- ant, none of which were executed by Boyce, but upon examination it will be found they do not excuse him from liability. In contemplation of law the smoke-stack was erected by Boyce. The extension of the stack (Boyce,

under his agreement with the University Club, agreeing to carry it up to the height of any building which he should afterwards erect on his premises,) renders him liable for the defective fastening or construction of the extension, which appears to have been the portion which fell and caused the injury to plaintiff.

Appellant urges that the damages are excessive. The question of damages was settled by the judgment of the Appellate Court and cannot be reviewed here. *Chicago and Grand Trunk Railway Co.* v. *Gaeinowski*, 155 Ill. 189.

It is also urged that the court erred in overruling defendant's motion in arrest of judgment, defendant claiming that the declaration is defective in not averring notice of the defective condition of the smoke-stack, and also because it fails to aver a request to Boyce to properly fasten the smoke-stack. If we assume that the declaration was subject to a demurrer because it failed to allege notice to the defendant or a request to properly fasten the stack, it does not follow that a motion in arrest of judgment should be sustained because of such defects. In 1 Chitty's Pleading (13th Am. ed. p. 673,) the rule is laid down, as follows: "That where there is any defect, imperfection or omission in any pleading, *whether in substance or form*, which would have been a fatal objection upon demurrer, yet if the issue joined be such as necessarily required, on the trial, proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the judge would direct the jury to give or the jury would have given the verdict, such defect, imperfection or omission *is cured by verdict*." (*City of LaSalle* v. *Porterfield*, 138 Ill. 114; *Commercial Ins. Co.* v. *Treasury Bank*, 61 id. 482; *Keegan* v. *Kinnare*, 123 id. 280.) The motion in arrest was properly overruled.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*