Thomas Valuch, Appellee, v. Frederick H. Rawson,
Trading as Chicago Surface Lines et al.
Appeal of Frederic H. Rawson, Trading as Chicago
Surface Lines et al., Appellants.

Gen. No. 36,277.

584

586 

Opinion filed May 24, 1933.

WEBER, MILLER, DEFFENBAUGH & DONOVAN, for appellants; FRANK L. KRIETE and JOHN E. KEHOE, of counsel.

MCKENNA, HARRIS & SCHNEIDER, for appellee; JAMES J. MCKENNA and ABRAHAM W. BRUSSELL, of counsel.

MR. PRESIDING JUSTICE WILSON delivered the opinion of the court.

Plaintiff recovered a judgment in an action in tort against the receivers of Chicago Railways Company, Chicago City Railway Company, Calumet & South Chicago Railway Company and The Southern Street Railway Company, doing business as Chicago Surface Lines and also against the City of Chicago. The action grew out of injuries sustained by the plaintiff, Thomas Valuch, on the night of September 16, 1930, while he was driving his automobile north in Crawford avenue.

It is plaintiff's claim that at the time of the accident he, himself, was in the exercise of ordinary care, and that at a point approximately 100 feet north of Addison street and while he was proceeding in a northerly direction over Crawford avenue, the wheel of his automobile struck a hole in the pavement of the right of way of defendants Chicago Surface Lines and as a result his car was caused to swerve and come into collision with a street car operated by the defendants Chicago Surface Lines and plaintiff received injuries by reason of which it became necessary to amputate his arm.

From the evidence it appears that there were two parallel street car tracks in Crawford avenue running

north and south. On the west track the Chicago Surface Lines operated its southbound cars and on the east track it operated its northbound cars. Between the two tracks was a space sufficiently wide to permit the passage of cars operated in opposite directions.

Plaintiff testified that on the night of the accident he was driving his automobile north on Crawford avenue and that his left front and left rear wheels were between the two rails of the northbound track; that he saw the street car coming from the north and that about 25 feet before reaching the street car which was proceeding in the opposite direction, he felt a kind of jerk and the wheels of his automobile changed their course and he was thrown against the side of the street car. He did not see a hole and remembered nothing more after the accident until probably 15 or 20 minutes later.

Plaintiff testified further that at the time of the accident he was driving between 20 and 25 miles an hour and that the left front wheel of his car struck a hole knocking the wheel out of his hand and throwing him forward. From the evidence it appears that after the accident the car swerved and struck a garage located on the east side of the street at a point approximately 200 feet north of Addison street.

The witness Grunner testified that his place of business was about 100 feet north of Addison street on Crawford avenue and that as he was leaving it on the night of the accident he saw a street car going south and as he got to a point about 75 feet from Addison street he saw an automobile proceeding north with its right-hand wheels about six inches west of the east rail of the northbound track. He saw the automobile swerve to the left and scrape along the street car. The automobile then swerved to the right and came directly toward him, hitting the garage within a few feet of where he was standing; that he looked into the car and saw a man slumped over the seat, apparently in

a daze and that his arm was torn off; that he tied up the arm with a piece of wire and ran for a doctor. The witness testified further that there were holes in the center of the street and also in the small section of cobblestones adjacent to the track, at a point approximately 100 feet from Addison street. That this condition had existed for a period of months; that there was a hole about the size of four or five bricks in the center of the northbound car track. This witness further testified that the next morning he noticed a work car used by the surface lines, delivering material such as sand, bricks and gravel at the place where the hole was located; that he also noticed a gang working in the street car tracks at that point.

The witness Blyth testified that he was familiar with the condition of the street at a point 75 or 150 feet north of Addison street and that on the east side of the track there was a hole from 2 to 3 feet long and probably from 12 to 14 inches in width and from 6 to 8 inches deep; that he saw the hole on the Sunday or Saturday immediately following Labor Day.

The motorman of the street car involved in the collision testified that he saw the approaching car and that it was straddling the inside rail of the northbound track; that he did not see the car vary from a straight line up to the time he passed it; that he later heard a crash and applied the air. He also testified that he examined the pavement carefully after the accident, but did not see any holes or defects in the pavement. This testimony appears to conflict with that of the witness who testified to seeing repairs being made the following morning.

Richards, a witness for defendants, testified he was a passenger on the southbound street car and was standing on the front platform the night of the accident; that he saw the automobile coming and it had apparently passed half of the street car when he heard

the crash; that at the time the automobile was straddling the street car rail on the inside.

Dyra, a witness for the defendants Chicago Surface Lines, testified that he was foreman for the Chicago Surface Lines and had charge of the tracks of the defendants on Crawford avenue in the block immediately north of Addison street; that it was part of his duty to observe this track and he went over it four or five times a week; that in September he found a loose joint about 65 feet north of Addison street, which he repaired on September 18, 1930; that he found out that this joint was loose about a month before that time; that the condition of the pavement along the break was a couple of inches low; that on the 18th of September when he mended the joint he broke out the pavement to put in a new piece of rail; that when the rail was put back the concrete was renewed and the granite blocks put back.

It is insisted that the evidence does not sustain the contention of the plaintiff that the accident was caused by reason of the hole in the pavement on the right of way of the defendants; that such evidence as there is, is conjectural and amounts only to a surmise; that the accident might have happened by reason of a blowout or some object on the street and not from a hole or depression. There is evidence in the record, however, showing that there was a hole within the rails of the Chicago Surface Lines, but there was no evidence of any foreign object upon the street which could have caused the accident. It is claimed that after the accident the automobile had a flat tire, but this may have been the result of the collision as well as from any other cause. The automobile and the street car were traveling in opposite directions at a fair rate of speed and it would be impossible to locate the exact point where the automobile was caused to swerve. The question as to whether or not there was a hole in the pavement upon the tracks of the defendants, which was the

proximate cause of the injury, was one of fact for the jury. There is ample evidence upon the part of the plaintiff's witnesses to sustain the verdict and we are not disposed to disturb it on that ground.

During the course of the trial plaintiff offered in evidence an ordinance of the City of Chicago granting the use of the street to the defendants for the purpose of operating its street cars thereon. Among other provisions, the ordinance provides that the defendants should at their own expense fill, grade, pave and keep in repair that portion of the street occupied by them. Other portions of the ordinance more specifically pointed out the duty of the defendants in this regard.

The defendants Chicago Surface Lines by their counsel objected on the ground that these ordinances had to do with the relationship which existed between the companies and the City of Chicago and were not admissible for the purpose of showing any contractual relationship between the plaintiff and the defendant railway company. The plaintiff, however, did have the same right under the ordinance as had the public in general. Further that there was no common-law liability of any kind imposed upon the street car company in connection with the care and maintenance of public streets of the City of Chicago and that under the declaration the ordinances were inadmissible and incompetent.

The declaration charged that at the time and place of the accident the defendants Chicago Surface Lines were in possession and control of certain double tracks laid in said public highway, and used said tracks for their right of way, and that the defendants, Chicago Surface Lines and City of Chicago, jointly and concurrently possessed, controlled and managed said Crawford avenue at the place in question and that it became the duty of the defendants to exercise due care to keep said public highway at said point in a reasonably safe condition for travel thereon. In an action for

negligence it is necessary for the plaintiff to aver and prove, first, the existence of the duty on the part of the defendant to protect the plaintiff from the injury from which he complains; second, a failure of the defendant to perform that duty; and third, an injury to the plaintiff resulting from such failure. It is not necessary to allege evidentiary facts. The same particularity in pleading is not required where issue is joined and after verdict as would be required upon the hearing of a demurrer. The Supreme Court of this State in the case of *Miller v. Kresge Co.,* 306 Ill. 104, in its opinion, says:

"We have repeatedly held that although there is a defect, imperfection or omission in a declaration, of substance or form, which would have been a fatal objection upon a proper demurrer, yet if the issue joined be such as necessarily required, on the trial, proof of the facts so defectively or imperfectly stated or omitted, and without which it is not to be presumed that either the judge would direct the jury to give or the jury would have given the verdict, such defect, imperfection or omission is cured by the verdict." (Citing cases.)

See, also, *Smith v. Rutledge,* 332 Ill. 150, wherein the court said:

"After judgment the rule by which pleadings before judgment are construed most strongly against the pleader is reversed and the pleading upon which the judgment is based is liberally construed for the purpose of sustaining the judgment. If the declaration filed in the cause states a cause of action, however defectively or imperfectly, and the issue joined is such as necessarily to require proof of the facts defectively stated, it is sufficient. (*Plew v. Board,* 274 Ill. 232; *Diamond Glue Co. v. Wietzychowski,* 227 id. 338.) Applying these rules, we must hold that while the declaration in this case is demurrable it is sufficient to sustain a judgment after verdict."

Defendants' position is based upon the proposition that the recovery in this case is predicated upon the violation of an ordinance and cite in support of their position *McCrotty v. Baltimore & Ohio S. W. R. Co.*, 223 Ill. App. 390; *Illinois Cent. R. Co. v. Godfrey*, 71 Ill. 500, and other cases. A reading of these cases, however, shows that the ordinance in question was not similar to that involved in this proceeding. In those cases recovery was sought from the defendants on the ground of the failure to observe a regulatory ordinance. The ordinance in question in the case at bar is in the nature of a contract between the city and the street car company, under which the street car company undertook to perform certain duties in consideration of the franchise or rights granted to it, namely, to operate cars over and along certain streets in the City of Chicago, and particularly the street in question. Proof of this ordinance was admissible in evidence for the purpose of sustaining the allegation that it was the duty of the street railway company to keep the street in repair between the rails of its tracks. If the company was operating street cars in the city streets, it was under the common-law obligation to keep its rails in a proper and suitable condition, and we believe this could properly be extended so as to include that portion of the street between the rails over which the cars ran. The court had occasion to consider this question in the case of *Chicago Union Traction Co. v. Fitzgerald*, 138 Ill. App. 520, and in its opinion the court said:

"We think that the averment that the defendant permitted a hole to remain 'within the rails' of the south track is not an averment that such hole was within or between the flanges, but is an averment that such hole was within or between the rails proper, and that proof that a part of the flange of said south rail was broken off at its junction with the web of the rail proper and was gone, leaving a hole where the flange

was when in place, was proof of the averment of the declaration. Under the general principles of law, independent of any ordinance, appellant was bound to use reasonable care to keep the flanges reasonably safe for vehicles to pass along and over.''

In the case of *Commonwealth v. Newton Township,* 276 Pa. 172, the court in its opinion, said: ''Under common law principles, a street railway company is required to maintain and repair the portion of the highway occupied by its facilities; *Chambersburg Borough v. Chambersburg, etc., Co.,* 258 Pa. 57, 60. 'When the state gives up a portion of one of its highways to particular use, without providing that what had been the duty of the municipality as to it shall continue, such duty devolves upon the party acquiring the right to use it, and a street railway company, given the right to use such portion of a street as is needed for its tracks, in taking charge of it, is charged with the duty of properly maintaining it.' ''

In the case of *Law v. City of St. Louis,* 292 Mo. 385, the court in its opinion lays down the following rule: ''The occupancy of the street by the United Railways Company created a special right or interest therein in favor of said company, which right must not be allowed to interfere with the safe use by the public. The primary duty of keeping in repair the part thus occupied is cast upon the United Railways Company, and a different rule of liability exists than that of an abutting owner. Such liability and duty to repair exists at common law, and an action can be maintained by a third party injured directly against such railway. *St. Joseph v. Railroad,* 116 Mo. 636; *Independence v. Mo. Pac. Ry.,* 86 Mo. App. 585; *Jenre v. Railroad,* 86 Kan. 479; *Brooklyn v. City Ry. Co.,* 47 N. Y. 475; *St. Paul Water Co. v. Ware,* 16 Wall, 566.''

The case of *San Antonio Traction Co. v. Cassanova* (Tex. Civ. App.), 154 S. W. 1190, follows the same rule and in its opinion, says:

"It is the duty of a street railway company to use reasonable care and diligence to keep its roadbed in repair so as not to obstruct travel across or along the same, whether such duty is enjoined by legislative act or stipulated in the charter, or in an ordinance, or not. The duty arises from the use of the street by the railway company. *Railway v. Medlenka,* 17 Tex. Civ. App. 621, 43 S. W. 1028; *Laredo Electric Railway v. Hamilton,* 23 Tex. Civ. App. 480, 56 S. W. 988. It was a matter of defense to show that the defect was not known to appellant, if such want of knowledge be a defense, as we do not think it is. A *prima facie* case was made when it was shown that the obstruction was in the street."

See also *South Covington & Cincinnati St. Ry. Co. v. Wintermeyer,* 182 Ky. 94. The rule is recognized in our own Supreme Court in the case of *Fowler v. Chicago Railways Co.,* 285 Ill. 196. This was an action against a street railway company for damages sustained by the next of kin of one Allen, who was killed by reason of a defect in a street in the City of Chicago. At the time of the accident, plaintiff's intestate was driving in Halsted street and the wheels of his wagon dropped in a hole or depression of the pavement between the rails of the street car company operating upon the street. In that case it was insisted, as here, that there was no obligation between the street railway company and the plaintiff under which the street railway company was required to keep that portion of the street which it used in repair. The court, however, took the position that the street railway company occupied the character of a tenant in possession and was liable unless exempted by express agreement with the landlord. We cite at length from this opinion because it is illuminating and instructive:

"Plaintiff in error first contends that the circuit court erred in refusing to instruct the jury to find it not guilty, because its obligation, if any, to repair that

portion of the street where the injury occurred arose merely from its contract with the city, and did not render it liable in a direct suit by the person injured by reason of the failure of the plaintiff in error to keep that portion of the street in repair. While this exact question has not been heretofore presented to this court for decision, the principle involved has been recognized in cases involving the question whether a suit can be brought directly against a landlord by reason of the fact that he has by contract agreed with the tenant to keep the demised premises in repair. Thus, in *Gridley v. City of Bloomington,* 68 Ill. 47, it was said: 'The general rule is, that the occupant, and not the owner as such, is responsible for injuries received in consequence of a failure to keep the premises occupied in repair. (Citing authorities.) To this rule the authorities recognize these exceptions: (1) Where the landlord has, by an express agreement between the tenant and himself, agreed to keep the premises in repair, so that in case of a recovery against the tenant he would have his remedy over; then, to avoid circuity of action, the party injured by the defect and want of repair may have his action, in the first instance, against the landlord,' etc. To the same effect are *Boyce v. Tallerman,* 183 Ill. 115, and *West Chicago Masonic Ass'n v. Cohn,* 192 id. 210. Upon the same line of reasoning, while the duty to keep the streets of a city in repair is imposed by law upon the city, where a street railway, in consideration of a license to construct and operate its road on a public street, has agreed with the city to keep the street in repair, any person sustaining damage by reason of the failure of the street railway to keep the street in repair may, in order to avoid circuity of action, maintain a suit directly against the street railway for the damages occasioned thereby; and such is the holding in other jurisdictions where the question has been presented.''

Under the analogy in the foregoing opinion in an action against a tenant in possession, it would not be necessary to charge and allege in the declaration all the facts under which the tenant came into possession of the premises, but these facts are such evidentiary facts as could be introduced in evidence in order to support the charge in the declaration that the tenant was in possession. In addition to the ordinance introduced in evidence there were facts from which the jury could have reached the conclusion that the street car company was in control of the premises in question.

The witness Dyra testified that he was the section foreman for the Chicago Surface Lines and that it was his duty to pass over the tracks and observe the condition and to make repairs when necessary and to remove the concrete and place the blocks back in the pavement when repairs were made. Moreover, there is testimony to the effect that the defendant did, in fact, make repairs immediately after the accident.

In addition to the rule laid down in the authorities cited, there is considerable force in the argument advanced by the plaintiff that the court should take judicial notice of the fact that in the City of Chicago all street railway lines are obligated to repair and keep in a proper and suitable condition that portion of the rails as well as a short distance of the pavement immediately adjacent to the outside rails or tracks. In order that a court may take judicial notice of any fact it must appear that it is a matter of common and general knowledge and that it must be well established and known within the limits of the jurisdiction of the court. It may well be said that the ordinance regulating the use of the streets by street railway companies in the City of Chicago is one generally known. The courts of this jurisdiction have had frequent occasion to pass upon these ordinances and the decisions with reference thereto are numerous. The ordinance itself, under which the street car companies are operating, was sub-

mitted to the vote of the people and it may be assumed that the public in order to vote intelligently thereon familiarized itself with the terms of the ordinance.

The Chicago Surface Lines have taken the position that it was the duty of the plaintiff to have introduced the entire ordinance. With this we cannot agree, as it is evident that if there was anything of importance contained in said ordinance which the defendants desired submitted to the jury it could have easily been offered by the defendants.

Under the view we take of the matter, the allegation that the defendants, receivers of the Chicago Surface Lines, were in control of and obligated to keep in repair that portion of the street where the accident happened, was a sufficient allegation particularly after verdict to sustain the judgment.

While the plaintiff's witness Grunner was upon the stand, he was handed a statement and asked whether or not it had been signed by him and his answer was in the affirmative. This was while plaintiff was putting in his case in chief. This statement was not introduced in evidence and after both sides had rested and before the argument to the jury began the defendants asked leave to introduce the document in evidence. The trial court held that the offer came too late. Whether or not the document was received in evidence at this stage of the proceeding was one resting within the sound discretion of the trial court. It appears the witness Grunner was no longer in court and could not have been examined by plaintiff's counsel concerning it, and we are not prepared to say that the ruling of the trial court in this regard was an abuse of its discretion.

It is urged as ground for reversal that evidence was admitted as to the profits derived by plaintiff from the business in which he was engaged. We find, however, that the objection to this line of examination was on the ground that there had not been a sufficient founda-

tion laid upon which such profits could be predicated. This objection did not question the competency of the testimony and on cross-examination the witness was fully examined on this question. We do not believe that there was such error as would justify a reversal of this cause for the reasons stated.

We have examined the instructions and find no reversible error in the giving or refusing of any such instructions.

The judgment was for $15,000 for the loss of an arm and we do not consider this excessive. The judgment is against both the City of Chicago and the Chicago Surface Lines. There is no separate brief filed on behalf of the City of Chicago nor any reason advanced as to why the judgment would not be good as to this defendant. Moreover, the city is primarily liable and this court is not concerned with any arrangement between the City of Chicago and the Chicago Surface Lines with reference to the satisfaction of the judgment.

For the reasons stated in this opinion the judgment of the circuit court is affirmed.

*Judgment affirmed.*

HEBEL and HALL, JJ., concur.