Cook County Department of Environmental Control, Plaintiff-Appellant, *v.* Tomar Industries, Division of Polk Brothers, Defendant-Appellee.

(No. 60931; ■■■■■■■■)

First District (3rd Division)—June 5, 1975.

Bernard Carey, State's Attorney, of Chicago (Sheldon Gardner and Ellis B. Levin, Assistant State's Attorneys, of counsel), for appellant.

Paul D. Fischer, of Chicago (Crane and Kravets, of counsel), for appellee.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiff, Cook County Department of Environmental Control, filed a complaint against defendant, Tomar Industries, Division of Polk Brothers, charging that on March 28, 1974, defendant violated article VI, section 6.1—1(a) of the Cook County Environmental Control Ordinance which prohibits the emission of smoke in excess of 1½ Ringelmann. Following a trial without a jury the trial court found defendant not guilty and entered a judgment on the finding, discharging the defendant. Plaintiff appeals.

Plaintiff contends that the trial court erred in taking judicial notice of a weather report and also that the trial court's finding that it was physically impossible to have obtained a proper Ringelmann reading under the weather conditions on the day in question was contrary to the manifest weight of the evidence. The pertinent facts follow.

Trial was had on May 23, 1974. Norbert Davis, an inspector for plaintiff, trained in the use of the Ringelmann smoke chart, was the only witness to appear for plaintiff. The Ringelmann chart consists of four graduated shadings used as a device to visually compare the density of smoke measured to correspond to one of the numbered shadings on the chart. Davis testified that on March 28, 1974, between 7:28 A.M. and 8:17 A.M., he observed emissions from a boiler smokestack on defendant's property located at 1401 North First Avenue in Melrose Park, Illinois, during which he recorded emissions equivalent to a number four reading on the Ringelmann chart for a period of 11 minutes. He also took two colored Polaroid photographs of the emissions which were admitted in evidence over defendant's objection. Davis stated that the weather conditions at the time were clear, cloudy and no precipitation. He issued a notice of violation which required defendant's appearance in the trial court. He further testified that later that day at another location he had a conversation with Theodore Telka, a maintenance man for defendant. Telka told him that Louis Posner, assistant superintendent for defendant, "turns up a boiler valve to get more heat, he doesn't know it has an automatic system, an automatic control and he turns the valve up to get more heat, and this creates a maladjustment and creates smoke." Davis stated that he advised Telka to have the boiler inspected and serviced, if necessary.

At the close of plaintiff's case defendant moved for a directed verdict, which was denied. Defendant then requested the trial court to take judicial notice of the weather report for March 1974 compiled by the U.S. Department of Commerce, National Oceanic and Atmospheric Ad-

ministration, taken at O'Hare International Airport in Chicago. The trial court, over plaintiff's objection, took judicial notice of the report exhibited by defendant, which report itself was never offered or introduced into evidence.

The weather report, which plaintiff included as an appendix to his brief in this court, is divided into the separate days of the month and into specific hours for each day. The data purportedly was gathered at the National Weather Service Office at O'Hare International Airport. Listed for March 28, 1974, is the general description of fog and thunderstorms with a total of 0.03 inches of rainfall recorded. The report further indicates that in the hours ending at 8 A.M. and 9 A.M., a trace of rainfall was recorded, and that it was raining between the hours of 6 A.M. and 9 A.M. A certification statement is contained in the printed report followed by a printed facsimile signature of the director of the National Climatic Center. No seal or manual signature appears on the statement.

Defendant's only witness was Albert Langwost, an operational manager for defendant, who testified that the boiler in question was on the premises when the defendant acquired the property. He testified that the boiler had automatic controls; that it was rebuilt in July 1972 and had not been under regular service contract since 1970; and that the only recent problem it had developed was a water leak in January 1974.

Closing arguments were had in which defendant's attorney stated that from his own experience he knew that a precise Ringelmann reading could not be taken on a dark, cloudy day and that Inspector Davis should have used a tree, building, or some other dark object as a background in his observations to offset the misleading weather conditions. Plaintiff's attorney responded that Davis was trained in the use of the Ringelmann chart; that over a period of several minutes he had taken a reading of excessive emissions from defendant's smokestack and that defendant had introduced no evidence to refute plaintiff's evidence that a proper reading had been taken. The trial court then found for the defendant, stating: "Gentlemen, it's the opinion of this Court that pursuant to the United States Weather Bureau, raining cloudy day, it's physically impossible in the opinion of this Court for the inspector to get a proper reading. Discharged." Plaintiff's subsequent motion to vacate the judgment was denied.

Plaintiff initially contends that the trial court erred in taking judicial notice of the weather report. He argues that the report was not relevant to the issues in the case inasmuch as the weather data recorded at O'Hare International Airport is not probative of the weather conditions existing at a specific time and at a location some 4 miles away. Plaintiff further

argues that since the report was not properly certified and not admissible in evidence it also could not be taken as a proper foundation for the exercise of judicial notice.

■■ We agree that the trial court erred in taking judicial notice of the report, but for reasons other than those urged by plaintiff which related to admissibility. As previously noted, the report was not introduced into evidence. The error occurred in taking judicial notice of the contents of a report which contents were not a proper subject for judicial notice. In *Nicketta v. National Tea Co.* (1949), 338 Ill.App. 159, 162, 87 N.E.2d 30, it was stated:

> "If the matter falls within the domain of judicial knowledge, it is beyond the realm of dispute; therefore, evidence is unnecessary. It is the judge's function to decide whether a matter is a subject of evidence or of judicial notice. The judge should be free to make for himself such investigation as he desires, but he should also be able to call upon the parties for assistance. In a few cases it is said that the judge should have received evidence offered to show the opposite of what he declared to be a judicially noticed fact. What is meant is that the subject did not fall within the realm of judicial notice. [Citation.] A trial court will take judicial notice of many things, such as the statutes of the United States and the States, well established and well known historical and scientific facts and matters of common knowledge which it would be senseless to make a litigant prove or to permit him to prove."

Only two areas may possibly be relevant as to the status of the weather report in the instant case. Judicial notice will operate to admit into evidence without formal proof facts which are a matter of common and general knowledge and which are well established and known within the jurisdiction of the trial court. (*Palmer v. Mitchell* (1965), 57 Ill.App.2d 160, 206 N.E.2d 776; *Sundene v. Koppenhoefer* (1951), 343 Ill.App. 164, 98 N.E.2d 538.) Also, scientific facts which have been well established by authoritative scientists and which are generally accepted as irrefutable by living scientists may be judically noticed. (*Nicketta v. National Tea Co.*) Neither of the foregoing supports the application of judicial notice in the instant case.

■■ Here the trial court judicially noticed weather conditions existing on a day approximately 2 months prior to the date of the trial. Variable weather conditions, not strikingly unusual, so remote in time, cannot reasonably be held to constitute factual matters of common or general knowledge within the community. Neither can the contents of the weather report be deemed to constitute irrefutable scientific facts as to the weather conditions at the particular time and location of the emissions and the

observations here involved. The certainty required of scientific facts which may be judicially noticed is clearly lacking in weather data recorded at a location so distantly removed from the place where Inspector Davis conducted his visual observations. Generally, the lack of certainty would affect merely the weight and not the admissibility of such evidence, if the report was properly authenticated prior to being offered in evidence. However, the defect is fatal to the applicability of judicial notice as to the contents of the weather report as scientific facts of an irrefutable character.

■■■ When a violation of an ordinance is alleged, as distinguished from a criminal charge, the violation must be proved by a "clear preponderance" of the evidence and not a "mere preponderance." (*City of Chicago v. Carney* (1962), 34 Ill.App.2d 303, 180 N.E.2d 729; *City of Chicago v. Butler Bros.* (1953), 350 Ill.App. 550, 113 N.E.2d 210.) Ordinarily, in a bench trial, a presumption arises that only competent evidence was considered by the trial court in reaching the decision rendered. (*Purcell v. Weasel* (1957), 12 Ill.2d 356, 146 N.E.2d 580; *People v. Armstrong* (1967), 80 Ill.App.2d 77, 224 N.E.2d 675.) The rule is otherwise where it affirmatively appears from the record that inadmissible evidence was considered in arriving at the decision. (*People v. De Groot* (1969), 108 Ill.App.2d 1, 247 N.E.2d 177; *Williams v. Williams* (1955), 8 Ill.App.2d 1, 130 N.E.2d 291.) In the instant case, the trial court by its express finding clearly indicated that not only were the contents of the weather report considered by it, but that the contents were relied upon as the foundation for the decision rendered in favor of defendant. It cannot be disputed that plaintiff was prejudiced when the trial court erred in taking judicial notice of the contents of the weather report.

In the interest of justice, the judgment herein must be reversed and the cause remanded for a new trial. It is therefore not necessary to consider the remaining contention that the trial court's finding that a proper reading was physically impossible to obtain under the weather conditions, was contrary to the manifest weight of the evidence. For the reasons stated, the judgment of the trial court is reversed and the cause remanded for a new trial not inconsistent with the opinions expressed herein.

Reversed and remanded for a new trial.

McGLOON, P. J., and DEMPSEY, J., concur.