*In re* DAVID EVANS.—(THE PEOPLE OF THE STATE OF ILLINOIS, Petitioner-Appellee, *v.* DAVID EVANS, Respondent-Appellant.)

Fourth District No. 15907

Opinion filed July 15, 1980.

264

LEWIS, J., dissenting.

Greg R. Siedor, of Legal Advocacy Service, of Springfield, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Kitty M. McCarthy, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

Respondent, David Evans, appeals the September 14, 1979, order of the circuit court of Macon County finding him to be a mentally ill person subject to involuntary admission and ordering him hospitalized in the Department of Mental Health and Developmental Disabilities all pursuant to the Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1979, ch. 91½, par. 1—100 *et seq.*). He does not dispute that he was shown to be mentally ill, but asserts that the proof of his being subject to involuntary admission did not meet the "clear and convincing" requirement of section 3—808 of the Code (Ill. Rev. Stat. 1979, ch. 91½, par. 3—808). We affirm.

In order to prove a person to be subject to involuntary admission, section 1—119 of the Code (Ill. Rev. Stat. 1977, ch. 91½, par. 1—119) requires proof that because of mental illness the person is either (1) "reasonably expected to inflict serious physical harm upon himself or another in the near future, or (2) * * * unable to provide for his basic physical needs so as to guard himself from serious harm." Only the latter disability was alleged here. After closing arguments, the trial court denied petitioner's request to amend the petition to also allege that respondent could be "reasonably expected to inflict serious physical harm upon himself" but found the allegations of the petition to have been proved. The court based its decision upon respondent's inability to comprehend the serious harm that could result to him from drinking alcohol while taking phenobarbital.

Three witnesses testified at the bench hearing, Dr. Orlando Cabrera, a psychiatrist who had examined respondent, Joe Evans, father of respondent, for petitioner, and respondent, on his own behalf. After the hearing the order on appeal was entered.

Dr. Cabrera testified to examining respondent on August 30, 1979, and twice on September 6, 1979. He related the following observations. On first examination, respondent appeared to be an unkempt person,

unable or unwilling to work, appearing to wander without purpose and heavily dependent upon alcohol and drugs but aware of his surroundings. Because of hearing of respondent's failure to follow up treatment given at a detoxification center, Dr. Cabrera tried unsuccessfully to get respondent to accept voluntary hospital admission. Upon examining respondent on September 6, the doctor found respondent to be much worse, clearly schizophrenic. He then recommended hospitalization. Dr. Cabrera stated,

> "He had gone to a physician who had prescribed barbituates and I felt that a combination of barbituates with alcohol would worsen his condition, so on September 6th I felt that his mental status was worse and he needed hospitalization."

Dr. Cabrera's recommendation for hospitalization was based upon both respondent's propensity to harm himself and his inability to care for himself so as to guard himself from harm. The doctor also made a routine call upon respondent on September 10, 1979.

Dr. Cabrera testified at trial that he still considered hospitalization of respondent to be necessary.

Joe Evans, respondent's father, testified that (1) he had been unsuccessful in forcing respondent to get a job, (2) respondent seemed to desire only to sit around and get drunk, (3) he had been unable to get respondent to accept the treatment he needed, and (4) he considered respondent to be unable to provide for his physical needs and to require hospitalization.

Respondent testified that he did not desire and did not need counseling but could get along satisfactorily at home. He explained that he had recently taken a bus trip and fallen asleep, missing his stopoff point and ended up mistakenly in St. Louis, but blamed this upon the failure of personnel of the bus line to waken him at the proper time. He also admitted to having left the zone center where he was detained during the hearing but had voluntarily returned the same night. He admitted that there was a danger in mixing large amounts of alcohol and phenobarbital. When they asked if *his* welfare could be endangered by doing this he answered, "The only thing I can say, drinking beer, when I drink my weight and size I don't get sick or nothing. Just got some guts I guess." On cross-examination he stated that he did not drink too much beer and that he never endangered himself by drinking while taking phenobarbital. Nevertheless he admitted that he did drink beer while taking phenobarbital.

■■ The final order of the trial court was sufficient in form. Section 3—816(a) of the Code (Ill. Rev. Stat. 1979, ch. 91½, par. 3—816(a)) only requires that such order "be in writing and shall be accompanied by a statement on the record of the court's findings of fact and conclusions of

law." The order was in writing and the trial judge recited into the record that he found respondent to be mentally ill, "unable to provide himself with his basic needs," and a person subject to being hospitalized. The court also stated that respondent was unable to "comprehend the serious harm that can come from mixing the phenobarbital and alcohol."

■█■ We do not agree with respondent that a mentally ill person likely to harm himself- by drinking large quantities of beer while taking phenobarbital is not a person "unable to provide for his basic physical needs so as to guard himself from physical harm." Although an allegation under section 1—119(1) that respondent was "reasonably expected to inflict serious physical harm upon himself or another in the near future" might have been a more accurate designation, we deem the situation claimed here to fit under either category. A person so situated cannot guard himself from the harm that the combined drug and drink may inflict upon him.

■█ The central issue is thus the question of whether this evidence clearly and convincingly showed that defendant was likely to seriously harm himself by continuing to mix alcohol and phenobarbital. Dr. Cabrera found him to be schizophrenic. This, of itself, would have been insufficient to justify taking away his liberty. (*O'Connor v. Donaldson* (1975), 422 U.S. 563, 45 L. Ed. 2d 396, 95 S. Ct. 2486.) However, Dr. Cabrera also considered that respondent was likely to ingest combinations of alcohol and phenobarbital and that this would "worsen" his condition. Respondent admitted that mixing the two substances was dangerous, but his testimony exhibited a cavalier attitude as to the likelihood that he would himself make this mistake. In view of the uncontested evidence of respondent's schizophrenia and his inability to follow through with other treatment programs, the evidence was clear and convincing that respondent was unable to provide himself with the self-restraint necessary to guard himself from the serious harm of worsening his already unstable mental condition.

■█ Pursuant to the terms of section 3—702(a) of the Code (Ill. Rev. Stat. 1979, ch. 91½, par. 3—702(a)), the petition upon which this proceeding was based was accompanied by certificates of three persons who had examined. respondent, including Dr. Cabrera. In general, these certificates were more strongly supportive of the order than was the testimony. Because of this, suggestion has been made that the trial court improperly based its decision upon these certificates. We agree that their consideration would have been improper. We construe the scheme of the Code to be such that the certificates serve as a showing of probable cause to initiate the proceedings as a basis for temporary emergency hospitalization. (See Ill. Rev. Stat. 1979, ch. 91½, par. 3—602.) They are not evidence. The record does not indicate any substantial erroneous

consideration of those documents. We are satisfied that the court acted upon the basis of the evidence presented at the hearing.

As we deem the evidence properly presented sufficient to clearly and convincingly support the order, we affirm.

Affirmed.

MILLS, P. J., concurs.

Mr. JUSTICE LEWIS, dissenting:

I must dissent from the opinion of the majority. I do not believe the record supports the findings of fact made by the trial judge upon which the order of involuntary admission was based.

Contrary to the conclusion of the majority, there is no evidence in the record to support the assumption that the respondent here dangerously abused alcohol and drugs. There is no evidence of the amounts used. There is no scientific evidence that their use together constitutes a danger. Nor is this a matter that is properly the subject of judicial notice. *Cook County Department of Environmental Control v. Tomar Industries* (1975), 29 Ill. App. 3d 751, 331 N.E.2d 196.

On January 1, 1979, a new Mental Health and Developmental Disabilities Code (Ill. Rev. Stat. 1979, ch. 91½, par. 1—100 *et seq.*) went into effect. That code was designed to expand and make more secure the rights of the mentally and physically disabled of Illinois. As Judge Joseph Schneider, chairman of the Governor's Commission for Revision of the Mental Health Code of Illinois, stated in his message to the Governor:

> " 'Persons under our Constitution mean all persons and not some persons, and this philosophy is an underpinning of our recommendations. The Commission's goal is to insure that all mentally disabled persons are given the equal protection of the laws, that they are treated fairly and humanely, with the least possible restriction on their freedom." Report of the Governor's Commission for Revision of the Mental Health Code of Illinois, Preface vi (1976).

The Code provides that the trial court must make findings of fact upon the record. (Ill. Rev. Stat. 1979, ch. 91½, par. 3—816(a).) Moreover, the standard of proof is one of clear and convincing evidence. (Ill. Rev. Stat. 1979, ch. 91½, par. 3—808.) I find neither the conclusory statements of the examining psychiatrist and respondent's father, nor respondent's garbled and confused testimony, sufficient to meet this standard. While I do not deny that respondent may well be in need of mental treatment, I do not believe the standards provided by the new Code have been met by the State. I would therefore reverse and remand for a new hearing.