Marshall Field and Company, a Corporation, Plaintiff-Appellant, v. J. B. Noelle Company, a Corporation, Defendant-Appellee.

Gen. No. 50,686.

First District, First Division.

April 3, 1967.

Howard, French and Healy, of Chicago, for appellant.

Charles F. Meyers and Kirkland, Ellis, Hodson, Chaffetz & Masters, of Chicago (Charles M. Rush and John M. O'Connor, Jr., of counsel), for appellee.

MR. PRESIDING JUSTICE MURPHY delivered the opinion of the court.

Plaintiff seeks indemnification from defendant for expenditures made by plaintiff because of injuries sustained by defendant's employees while on plaintiff's premises. Plaintiff's two-count complaint alleges contractual and noncontractual claims for indemnity. Judgment was entered for defendant after a nonjury trial.

Defendant, an independent painting contractor, for some years had been doing the painting and decorating in the Marshall Field and Company Loop store under various contracts. The defendant had a locker room for his employees and a storage place for his paints, materials and equipment on the 13th floor, and had the privilege of using the freight elevator to transport men and equipment from the 13th floor.

On the evening of February 12, 1955, defendant was using the elevator to transport its men and equipment from the 13th floor to the budget basement. The elevator was being operated by George Pasaka, an employee

of defendant, and no employees of the plaintiff were present when the elevator was loaded with 2,110 pounds of equipment and 21 men. Pasaka testified that while the elevator was descending, the car went out of control at the 7th floor. One employee of defendant testified the elevator was going 50 miles an hour when it struck bottom, and another testified that the elevator "was going three to four times faster when the accident happened."

Eleven of the twenty-one employees of defendant brought suit against plaintiff for alleged injuries. The actions were commenced in five separate suits, in which allegations of negligence were made against Marshall Field and Company. Three of the suits resulted in verdicts or settlements in favor of the employees, and two of the suits resulted in not guilty verdicts in favor of Marshall Field and Company. One not guilty verdict was affirmed on appeal. Cobb v. Marshall Field & Co., 22 Ill App2d 143, 159 NE2d 520 (1959).

Plaintiff, Marshall Field and Company, seeks reimbursement for elevator repairs, amounts paid to defendant's employees, and attorneys' fees expended in defense of eleven personal injury claims, making a total liquidated claim of $50,155.81.

Plaintiff bases its contractual claim for indemnification on a printed form purchase order, dated and accepted by defendant on February 11, 1955. The order was prepared by plaintiff and provides on its face, in large boldface type, "CONDITIONS ON REVERSE SIDE HEREOF ARE A PART OF THIS CONTRACT. INSURANCE REQUIREMENTS: See Condition (2)." On the reverse side of the printed purchase order appears a heading "CONDITIONS" and below this, the following:

"2. INSURANCE: Contractor [Noelle] shall indemnify and save harmless Owner [Fields] against all claims for damages to property, injuries to or

411

death of persons or employees in or about their work and to the public generally (including death resulting therefrom) and all claims arising under Workmen's Compensation Act, and Workmen's Occupational Disease Act. Contractor shall, prior to commencing work and at his own expense, obtain such insurance as will protect Owner, himself and subcontractors against all such risks and all other statutory and common law liability arising from or based upon injury to or death of employees, himself, or subcontractors and their employees, and the public generally, in the performance of this contract. Contractor waives subrogation rights which might accrue to him under Section 29 of Illinois Workmen's Compensation Act. Policies shall be in companies and in form and amount satisfactory to Owner. Certificates denoting such insurance shall be deposited with Owner prior to commencement of work and shall contain an endorsement that the policies shall not be altered or cancelled without giving Owner ten days' notice in writing. Any loss of or damage to work or materials resulting from fire, sprinkler, theft, or otherwise, until formally accepted in writing, or until paid for by Owner, shall be at the risk of Contractor."

The defendant had not obtained any insurance which covered or protected the "Plaintiff-Owner" at the time of the occurrence. Defendant Noelle had its own coverage for (a) Workmen's Compensation, (b) bodily injury of $50,000/$100,000, and (c) property damage of $10,000/$50,000. A duplicate original certificate evidencing this coverage, dated April 23, 1954, had been delivered to plaintiff prior to the occurrence, and under previous work order contracts, but there were no endorsements covering plaintiff in any fashion. Plaintiff did not object to the form of the certificate nor did plaintiff make any

demand or request for additional or different insurance coverage, or indicate to defendant that the insurance coverage provided was unsatisfactory.

Plaintiff contends that defendant's breach of the agreement to provide insurance coverage for plaintiff does not absolve defendant from indemnification—"The requirement to have insurance coverage in the amount satisfactory to the plaintiff is a separate and distinct contractual provision as opposed to the provision that the defendant shall hold the plaintiff harmless. For the breach of the provision concerning the obtaining of insurance in appropriate amounts, the plaintiff would have an action but has elected not to prosecute for that breach. The insurance requirements are merely to insure that the defendant is solvent at the time indemnification is sought." Plaintiff asserts that similar contract provisions have been held sufficient to require indemnification, even though (not admitted) plaintiff might have been found guilty of negligence. Plaintiff's authorities on this point, including Haynes v. Montgomery Ward & Co., 47 Ill App2d 340, 198 NE2d 548 (1964), all stem from more explicit agreements, and we do not consider them in point here.

Defendant contends that the purchase order contract provided for insurance only. The face of the order states: "INSURANCE REQUIREMENTS: See Condition (2)," and on the reverse side Condition (2) "is followed by the word 'INSURANCE' also in boldface print; then follows a normal insurance requirement of 'indemnity' and 'to save Fields harmless' against claims." Defendant argues that "an integral part of 'Condition (2)' provides: '. . . Contractor shall, prior to commencing work and at his own expense, obtain *such insurance* as will protect . . . against all such risks . . . . Policies shall be in companies and in form and amount satisfactory to Owner . . . .' " [Emphasis added.]

413

From the foregoing, defendant argues that "INSUR-ANCE" means just that, and there was no separate "hold-harmless agreement."

In ascertaining the substantial intent of the parties, this court must look to the agreement as a whole, to its nature, purpose, and the subject matter with which it deals and, if ambiguous, to the circumstances under which it was made. Generally, words in a contract are to be given their usual and primary meaning at the time of the execution of the contract. Contracts must receive a reasonable construction according to the intention of the parties if that intention can be ascertained from their language. A reasonable construction will be preferred to one which is unreasonable. (17 Am Jur2d, Contracts.) An ambiguous contract will be construed most strongly against the party who prepared the contract and chose the words used, since he is the one who is responsible for the ambiguity (Cemetery Ass'n v. Village of Calumet Park, 398 Ill 324, 333, 75 NE2d 874 (1947); 12 ILP, Contracts, § 221), and, finally, indemnity and hold-harmless agreements are to be strictly construed. Westinghouse Elec. Elevator Co. v. LaSalle Monroe Bldg. Corp., 395 Ill 429, 70 NE2d 604 (1947).

It is undisputed that the contract in question was prepared by plaintiff, and from its form it is not clear that "INSURANCE REQUIREMENTS" was also intended to provide indemnity for plaintiff. Therefore, this ambiguity must be construed against plaintiff, who prepared the contract, and we hold that the instant contract referred only to insurance requirements and did not include an indemnity or hold-harmless agreement.

Next, plaintiff contends that it is entitled to common-law indemnity because its negligence was passive while

that of Noelle was active. The evidence heard by the trial court was the abstract of the testimony of the evidence received in the case of Cobb v. Marshall Field & Co., 22 Ill App2d 143, 159 NE2d 520. From this plaintiff states, "The evidence most favorable to the defendant was that the elevator descended rapidly and out of control. This evidence is not believable when the court considers that the damage to the elevator was slight, . . . that no repairs were made to separate machinery, cables, governor or safety device; that the elevator operated properly with an overload of 30% and that the elevator was overloaded by 60%." From this plaintiff argues that "the evidence then shows that the plaintiff was guilty of passive negligence in not equipping its elevator with a braking device adequate to control the descent of the elevator when overloaded by 60% of its capacity. But the evidence is also that the defendant was guilty of active negligence in allowing the elevator to be overloaded."

Defendant argues that an active tort-feasor can secure neither indemnity nor contribution from another tort-feasor (McDonald v. Trampf, 49 Ill App2d 106, 198 NE2d 537 (1964)), and that the evidence here is clear that plaintiff was an active tort-feasor.

██ Defendant also argues that this court is bound by the decision of the trial court unless that decision is contrary to the manifest weight of the evidence. (In re Estate of Pohn, 67 Ill App2d 227, 214 NE2d 553 (1966).) We agree. We have reviewed the entire record and find that an opposite conclusion to that of the trial court is not clearly evident because "there is lacking in the instant case that clearly higher degree of culpability on the part of one of several joint tort-feasors, which would warrant placing the entire burden upon him." Spivack v. Shara, 69 Ill App2d 22, 216 NE 2d 173 (1966).

For the reasons given, the judgment of the Circuit Court is affirmed.

Affirmed.

BURMAN and ADESKO, JJ., concur.