NOS. 4-09-0925, 4-10-0831 cons.    Opn F: 3/10/11

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

In re: Ch. W. and Ca. W., Minors,      )    Appeal from
THE PEOPLE OF THE STATE OF ILLINOIS,   )    Circuit Court of
            Petitioner-Appellee,       )    Champaign County
                  v.                   )    No. 09JA57
JERRY WELLS,                           )
            Respondent-Appellant.      )    Honorable
                                       )    John R. Kennedy,
                                       )    Judge Presiding.
_____

        JUSTICE TURNER delivered the judgment of the court,
with opinion.
        Presiding Justice Knecht and Justice Appleton concurred
in the judgment and opinion.

**OPINION**

        In August 2009, the State filed a petition for adjudi-
cation of wardship as to Ch. W. (born in October 2001) and Ca. W.
(born in September 2002), the minor children of respondent, Jerry
Wells.  The minor children's grandmother and adoptive mother,
Dena Wells, is not a party to this appeal.  After an adjudicatory
hearing, the Champaign County circuit court found the minor
children were neglected and dependent.  In December 2009, the
court made the minor children wards of the court and appointed
the Department of Children and Family Services (DCFS) as their
guardian.  Respondent appealed, contending (1) he was denied
effective assistance of counsel, (2) the State violated his due-
process rights, and (3) the trial court erred by finding the
minor children were neglected.

        In April 2010, this court retained jurisdiction of the
cause but remanded it to the Champaign County circuit court for

an evidentiary hearing on respondent's ineffective-assistance-of-counsel claim. *In re Ch. W.*, 399 Ill. App. 3d 825, 830, 927 N.E.2d 872, 876 (2010) (No. 4-09-0925). On remand, respondent filed a motion for a new adjudicatory hearing based on ineffective assistance of counsel. In October 2010, the Champaign County circuit court held a hearing on respondent's motion and found respondent was not denied effective assistance of counsel at the adjudicatory hearing. We now address the merits of all three of respondent's arguments on appeal and affirm the trial court's judgment.

## I. BACKGROUND

In 2004, respondent and Dena adopted the minor children, who are Dena's biological grandchildren. Dena suffers from chronic obstructive pulmonary disease. On March 26, 2009, DCFS became involved with the family after allegations were made that respondent had molested J.C., a neighbor child. The next day, Sheri Foley, a DCFS investigator, conducted separate forensic interviews of J.C. and Ch. W., which were recorded by both video and audio. Another DCFS investigator interviewed Ca. W. and another playmate of respondent's children, H.S. Under a DCFS safety plan, Ch. W. and Ca. W. remained in the home with Dena, and respondent lived elsewhere.

In April 2009, respondent was arrested and incarcerated. People v. Wells, No. 09-CF-746 (Cir. Ct. Champaign Co.). In June 2009, a grand jury charged respondent with one count of predatory criminal sexual assault of a child (720 ILCS 5/12-

14.1(a)(1) (West 2006)) (Ch. W. alleged victim) and one count of aggravated criminal sexual abuse (720 ILCS 5/12-16(c)(1)(i) (West 2008)) (J.C. alleged victim) for his actions in March 2008. In the criminal case, the State moved to admit, *inter alia*, Ch. W.'s statements to Foley under section 115-10 of the Code of Criminal Procedure of 1963 (Criminal Procedure Code) (725 ILCS 5/115-10 (West 2006)). After holding a hearing on the motion and viewing the recordings of the interviews, Judge Heidi Ladd denied the motion as to Ch. W.'s statements because Foley's questions were too leading to provide sufficient safeguards of reliability. In October 2009, the State dismissed all of the criminal charges against respondent, and he was released from jail.

On August 14, 2009, the police took protective custody of the minor children when Dena was admitted to the hospital and had no one to care for the minor children. Three days later, the State filed its petition, alleging the minor children were (1) neglected under section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2008)), in that their environment was injurious to their welfare when they resided with respondent as the environment exposed them to the risk of sexual abuse; and (2) dependent under section 2-4(1)(a) of the Juvenile Court Act (705 ILCS 405/2-4(1)(a) (West 2008)) because they lacked a parent, guardian, or legal custodian to care for them due to respondent's incarceration and Dena's poor physical health.

On September 25, 2009, the trial court commenced the

adjudicatory hearing, at which respondent was represented by David Appleman.  Dena admitted and stipulated to the dependent count of the petition, and the shelter-care report served as the factual basis for the admission.  The court entered judgment in favor of the State and against Dena and then proceeded to hear evidence as to respondent.  Only the pertinent testimony presented at the adjudicatory hearing is set forth below.

Foley testified she had received specific training in forensic interviewing of children and had "conducted 185 sexual[-]abuse reports."  On March 27, 2009, Foley interviewed Ch. W. at the Child Advocacy Center, which had a child-friendly atmosphere.  Foley indicated Ch. W. was developmentally delayed and that, while Ch. W.'s language was clear, it was more on the level of a five-year-old than a seven-year-old.  According to Foley, Ch. W. was comfortable during the interview and did not seem nervous or fearful.  Foley stated that, due to Ch. W.'s limited ability to answer open-ended questions, the questions asked her were more direct as to sexual abuse.

When Foley was asked about what Ch. W. said regarding the charges being investigated, defense counsel made an objection for the record, which the trial court overruled.  Foley testified Ch. W. disclosed sexual touching by respondent, whom Ch. W. referred to both as father and grandfather.  Specifically, Ch. W. stated her father had touched her in the vaginal area.

During the interview, Foley used both anatomically correct drawings and dolls.  Ch. W. was able to identify and

describe all the body parts on both the male and female drawings. Ch. W. also knew the differences between the genders and, for the most part, knew what every body part did in her own language. Foley admitted that, at certain points, Ch. W. was unable to identify certain body parts. Foley explained the dolls were tools used to help her understand what the child had stated happened. Foley showed Ch. W. all of the parts on the dolls, which were fully clothed. Foley asked Ch. W. to show her what happened, and Ch. W. took the male doll's hand and touched it to the girl doll's vaginal area. Ch. W. indicated it was skin-to-skin touching and Ch. W. was not wearing clothes. Foley testified Ch. W. stated it happened more than once but it was difficult to know a number with Ch. W.'s age and developmental delays.

On cross-examination, defense counsel asked Foley if she was able to make an estimate of Ch. W.'s mental age and what term Ch. W. used for "vagina." He also asked a couple of questions about (1) what Ch. W. called respondent and (2) Ch. W.'s biological father. In total, respondent's counsel asked Foley six questions on cross-examination.

The State also presented the testimony of Jeffrey Smith, the DCFS caseworker for respondent's family; Investigator Dwayne Roelfs, who interviewed respondent twice; and Deputy Andrew Good, an investigator with the Champaign County sheriff's department who observed Investigator Roelfs' two interviews of respondent. Investigator Roelfs testified respondent recalled an incident in his bathroom, in which Ch. W. touched his partially

- 5 -

erect penis. Respondent told her never to do it again. Respondent also recalled a time when he was giving Ch. W. a bath and was slightly aroused by bathing Ch. W.

The guardian *ad litem* presented the testimony of Deputy Kristin Zimmer, who had interviewed J.C.

Respondent testified on his own behalf and presented the testimony of his sister, Kathy Bush, and his brother, Greg Wells. Respondent testified that, due to his wife's medical problems, it was his job to bathe and dress the children. He denied touching Ch. W. inappropriately. Respondent also explained he had a problem with incontinence and could not always get the door shut when using the bathroom. One time, when he was unable to get the door shut, Ch. W. entered the bathroom and touched his penis. He slapped her hand and told her not to do it again. That had been three years earlier, and Ch. W. had not done it again. Bush and Greg testified they had not had any problems with respondent watching their children unsupervised.

In adjudicating the minor children neglected, the trial court noted it found the testimony of Foley to be "particularly convincing." Specifically, the court noted it found her interview was conducted under circumstances that enhanced the minor's credibility, rather than detracted from it. Besides Foley's testimony, the court noted Investigator Roelfs' testimony that, on at least one occasion, Ch. W. had touched respondent's penis.

At the December 2, 2009, dispositional hearing, the trial court found respondent was unfit and unable and Dena was

- 6 -

unable to care for the minors.  The court made the minors wards of the court and appointed DCFS as their guardian.  The next day, the court filed a written dispositional order, noting no just reason existed to delay enforcement or appeal.  On December 9, 2009, respondent filed a notice of appeal in compliance with Illinois Supreme Court Rule 303 (eff. May 30, 2008), and thus this court has jurisdiction under Illinois Supreme Court Rule 304(a) (eff. Jan. 1, 2006).  See Ill. S. Ct. R. 660(b) (eff. Oct. 1, 2001) (providing the rules governing civil cases govern appeals from final judgments in all proceedings under the Juvenile Court Act, except for delinquency ones).

On appeal, this court found the appellate record was insufficient to address respondent's ineffective-assistance-of-counsel claim and remanded the cause to the trial court for a hearing on the issue.  In doing so, we retained jurisdiction of the appeal so we could address respondent's claims if needed. *Ch. W.*, 399 Ill. App. 3d at 830, 927 N.E.2d at 876.

On remand, respondent filed a motion for a new adjudicatory hearing, alleging his counsel was ineffective because counsel failed to (1) ask the trial court to take judicial notice of Judge Ladd's ruling regarding Ch. W.'s statements, (2) object to the testimony of Foley concerning her interview of Ch. W., (3) submit the recordings of Foley's interviews of the children, and (4) aggressively or thoroughly cross-examine Foley regarding the conduct of the interview.

On October 6, 2010, the Champaign County circuit court

commenced a hearing on respondent's motion. At the hearing, the court considered (1) the verbatim transcript of the section 115-10 hearing in case No. 09-CF-746, which included Judge Ladd's oral ruling; (2) the recordings of the four DCFS interviews; (3) the appellate record in this case; and (4) respondent's testimony. Respondent testified he discussed Judge Ladd's ruling with Appleman. At the adjudicatory hearing, respondent asked Appleman how Foley could be testifying, and Appleman "shushed" him so Appleman could hear what was being said.

On October 13, 2010, the trial court reconvened the hearing and heard the parties' arguments. The court found Appleman was not deficient for failing to raise (1) Dr. Buetow's opinion she did not find physical findings consistent with abuse and (2) Judge Ladd's ruling because the court could not have taken judicial notice of it. The court did find Appleman deficient for not (1) cross-examining Foley's testimony about her need to be more direct with Ch. W., (2) viewing the interview recordings, and (3) using the interview recordings as evidence or in cross-examination. While the court found some deficiencies, it concluded no reasonable probability existed a different result would have occurred given appropriate performance by trial counsel. The court noted the recording of Ch. W.'s interview would not have detracted from the credibility of Foley's testimony.

When the cause returned to this court, we gave it an additional number (No. 4-10-0831). Under the new number, the

- 8 -

parties' filed briefs addressing the trial court's October 2010 ruling on the ineffective-assistance-of-counsel motion.  We now address the merits of all of respondent's contentions of error.

II. ANALYSIS

A. Ineffective Assistance of Counsel

Respondent argues the trial court erred by finding he was not denied the effective assistance of counsel.  Specifically, he asserts the court erred by finding (1) respondent's counsel did not act unreasonably by failing to object to Foley's testimony about Ch. W.'s out-of-court statements, (2) it could not have taken judicial notice of Judge Ladd's ruling, and (3) respondent's counsel's deficient performance did not prejudice respondent.

Section 1-5(1) of the Juvenile Court Act (705 ILCS 405/1-5(1) (West 2008)) grants minors and their parents the right to be represented by counsel in juvenile proceedings.  While the right to counsel in juvenile proceedings is statutory and not constitutional, "Illinois courts apply the standard utilized in criminal cases to gauge the effectiveness of counsel in juvenile proceedings."  *In re S.G.*, 347 Ill. App. 3d 476, 479, 807 N.E.2d 1246, 1248 (2004).  Thus, courts review ineffective-assistance-of-counsel claims in juvenile proceedings under the standards set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *S.G.*, 347 Ill. App. 3d at 479, 807 N.E.2d at 1248.

To establish ineffective assistance of counsel under *Strickland*, one must prove (1) his counsel's performance failed

- 9 -

to meet an objective standard of competence *and* (2) counsel's deficient performance resulted in prejudice to the defendant. *People v. Evans*, 186 Ill. 2d 83, 93, 708 N.E.2d 1158, 1163-64 (1999). To satisfy the deficiency prong of *Strickland*, the party must demonstrate counsel made errors so serious and counsel's performance was so deficient that counsel was not functioning as "counsel" guaranteed by the sixth amendment (U.S. Const., amend. VI). Further, the party must overcome the strong presumption the challenged action or inaction could have been the product of sound trial strategy. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163. To satisfy the prejudice prong, the party must prove a reasonable probability exists that, but for counsel's unprofessional errors, the proceedings' result would have been different. *Evans*, 186 Ill. 2d at 93, 708 N.E.2d at 1163-64.

Since the trial court held an evidentiary hearing on this issue on remand, our review of this issue is similar to reviewing an ineffective-assistance-of-counsel claim in a postconviction petition after a third-stage evidentiary hearing. In such cases, our supreme court has applied the manifestly erroneous standard of review. See *People v. Ruiz*, 177 Ill. 2d 368, 384, 686 N.E.2d 574, 582 (1997). The term "manifest error" means error that is "clearly evident, plain, and indisputable." *Ruiz*, 177 Ill. 2d at 384-85, 686 N.E.2d at 582.

### 1. *Objection to Foley's Testimony*

Respondent argues the trial court erred by finding respondent's counsel was not deficient for failing to object to

Foley's testimony about Ch. W.'s out-of-court statements. On appeal, respondent asserts such statements were inadmissible under section 2-18(4)(c) of the Juvenile Court Act (705 ILCS 405/2-18(4)(c) (West 2008)) because they were not really made by Ch. W. and did not relate to an allegation of sexual abuse.

Our supreme court has instructed us to begin our review of a case by determining whether any issues have been forfeited. See *People v. Smith*, 228 Ill. 2d 95, 106, 885 N.E.2d 1053, 1059 (2008). A review of the record shows that, in the trial court, respondent emphasized he was not arguing Foley's testimony was inadmissible but instead that it was unreliable. The supreme court has held a party forfeits its right to complain of an error where to do so would be inconsistent with the party's position in an earlier court proceeding. *McMath v. Katholi*, 191 Ill. 2d 251, 255, 730 N.E.2d 1, 3 (2000). Additionally, a party cannot complain of error that it induced the court to make or to which it consented. *McMath*, 191 Ill. 2d at 255, 730 N.E.2d at 3. Since respondent's argument on appeal is inconsistent with his argument in the trial court, we conclude respondent has forfeited this issue.

## 2. *Judicial Notice*

Respondent also asserts the trial court erred by concluding it would not have taken judicial notice of Judge Ladd's oral ruling at the section 115-10 hearing in respondent's criminal case.

Judicial notice is an evidentiary concept that allows

for the admission into evidence of matters without formal proof. *National Aircraft Leasing, Ltd. v. American Airlines, Inc.*, 74 Ill. App. 3d 1014, 1017, 394 N.E.2d 470, 474 (1979). Since it is an evidentiary concept, the rules regarding the admission of evidence apply. See *In re J.G.*, 298 Ill. App. 3d 617, 629, 699 N.E.2d 167, 175 (1998) (noting the proper way for a party to ask the court to take judicial notice of material in the court file so that the court could determine what matters where admissible under the rules of evidence). In his ineffective-assistance-of-counsel motion, respondent asserted his counsel should have asked the trial court to take judicial notice of Judge Ladd's ruling but did not provide an evidentiary basis for doing so. At the hearing on the motion, respondent raised the issue of collateral estoppel, asserting the State should have been estopped from arguing Ch. W's statements to Foley were reliable because of Judge Ladd's ruling.

For collateral estoppel to apply, the following minimum requirements must be met:

> "(1) the issue decided in the prior adjudica-
> tion is *identical* with the one presented in
> the suit in question, (2) there was a final
> judgment on the merits in the prior adjudica-
> tion, and (3) the party against whom estoppel
> is asserted was a party or in privity with a
> party to the prior adjudication." (Emphasis
> in original.) *Nowak v. St. Rita High School*,

197 Ill. 2d 381, 390, 757 N.E.2d 471, 478 (2001).

Moreover, "[a]pplication of the doctrine of collateral estoppel must be narrowly tailored to fit the precise facts and issues that were clearly determined in the prior judgment." *Nowak*, 197 Ill. 2d at 390-91, 757 N.E.2d at 478.

Section 115-10(a)(2) of the Criminal Procedure Code (725 ILCS 5/115-10(a)(2) (West 2006)) provides an exception to the hearsay rule in criminal cases for out-of-court statements made by the victim, "describing any complaint of such act or matter or detail pertaining to any act which is an element of an offense which is the subject of a prosecution for a sexual or physical act against that victim." However, section 115-10(b) provides, in pertinent part, such evidence is only admissible if:

"(1) The court finds in a hearing conducted outside the presence of the jury that the time, content, and circumstances of the statement provide sufficient safeguards of reliability; and

(2) The child *** either:

(A) testifies at the proceeding; or

(B) is unavailable as a witness and there is corroborative evidence of the act which is the subject of the statement[.]" 725 ILCS 5/115-10(b) (West 2006).

In cases under the Juvenile Court Act, section 2-18(4)(c) of that act (705 ILCS 405/2-18(4)(c) (West 2008)) provides for the admissibility of "[p]revious statements made by the minor relating to any allegations of abuse or neglect." While such statements are admissible, they are insufficient in themselves to support an abuse or neglect finding if they are uncorroborated and not subject to cross-examination. 705 ILCS 405/2-18(4)(c) (West 2008).

In this case, Judge Ladd concluded Ch. W.'s statements to Foley were inadmissible under section 115-10 because the leading nature of Foley's questions did not provide sufficient safeguards of reliability. See 725 ILCS 5/115-10(b)(1) (West 2006). Judge Ladd did not expressly find Ch. W.'s statements were not (1) hers or (2) statements relating to an act of sexual abuse. In fact, in his brief, respondent asserts Judge Ladd's finding was "tantamount" to a finding Ch. W.'s were not statements made by the minor relating to abuse. Collateral estoppel only applies to "issues that were *clearly determined* in the prior judgment." (Emphasis added.) *Nowak*, 197 Ill. 2d at 391, 757 N.E.2d at 478. Thus, collateral estoppel would not apply as argued by respondent on appeal.

Since respondent has not provided a proper basis for the admissibility in this case of Judge Ladd's ruling in the criminal case, we find the trial court did not err by finding it could not have taken judicial notice of Judge Ladd's ruling.

3. *Prejudice*

- 14 -

Respondent last asserts the trial court erred by concluding respondent's counsel's deficient performance did not prejudice respondent.

As stated, to satisfy the prejudice prong of the *Strickland* test, respondent had to demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The trial court found respondent's counsel was deficient for failing to (1) cross-examine Foley about needing to be more direct in questioning Ch. W. and (2) review and present the recording of Foley's interview of Ch. W. However, the court found respondent was not prejudiced by the deficiency because the recording of Ch. W.'s statements made her report of abuse more credible. The court noted Foley did not lead Ch. W. to the conclusion respondent was the one who did the inappropriate touching.

After reviewing the evidence presented at the evidentiary hearing on the ineffective-assistance-of-counsel claim, we conclude the trial court's reasoning and conclusion on the issue of prejudice were not manifestly erroneous. While Foley had to repeat and rephrase questions for Ch. W. and sometimes asked leading questions, the question to which Ch. W. pointed to a drawing representing respondent was open-ended. Foley had asked

Ch. W. if anyone touched her privates. Moreover, when Ch. W. responded by using the diagrams and dolls, it again was to open-ended questions.

Respondent places a great deal of weight on Judge Ladd's ruling. However, he has failed to show the trial court was bound by that ruling. Moreover, Judge Ladd considered Ch. W.'s statements in the context of a criminal proceeding. In a criminal proceeding, a defendant has a sixth-amendment right to confront and cross-examine a witness. U.S. Const., amend VI. The hearsay exception contained in section 115-10 of the Criminal Procedure Code is a narrow one that is also limited by our supreme court's decision in *Crawford v. Washington*, 541 U.S. 36, 68 (2004). See *People v. Reed*, 361 Ill. App. 3d 995, 1001, 838 N.E.2d 328, 333 (2005). Neglect proceedings are civil in nature, and the respondent does not have a sixth-amendment right to confront witnesses and *Crawford* does not apply. *In re C.M.*, 351 Ill. App. 3d 913, 916-17, 815 N.E.2d 49, 52 (2004). Accordingly, Judge Ladd had to consider the interview in the context of protecting an accused's constitutional right that is not present in this case.

### B. Due Process

In his original brief, respondent further asserted the State's offering of Foley's testimony at the adjudicatory hearing violated his right to due process.

"Parents have a constitutional right to the custody of their children ***." *In re O.S.*, 364 Ill. App. 3d 628, 637, 848

N.E.2d 130, 137 (2006). The State's deprivation of that right must comply with due-process principles. *O.S.*, 364 Ill. App. 3d at 637, 848 N.E.2d at 137. Compliance with the provisions of the Juvenile Court Act and fundamental fairness provides the parent due process. *O.S.*, 364 Ill. App. 3d at 638, 848 N.E.2d at 138.

The applicable exceptions to the hearsay rule are different under the Criminal Procedure Code and the Juvenile Court Act. In the trial court, respondent admitted Ch. W.'s statements were admissible under section 2-18(4)(c) of the Juvenile Court Act. Thus, the State complied with the Juvenile Court Act.

Respondent further argues the State's presentation of the evidence was fundamentally unfair. We disagree for several reasons. First, respondent has not shown the trial court in this case would have been bound by Judge Ladd's ruling. We note the First District rejected the argument collateral estoppel bars a proceeding under the Juvenile Court Act based on criminal sexual abuse when the alleged perpetrator was acquitted of the criminal-sexual-abuse charges. *In re A.A.*, 307 Ill. App. 3d 403, 405, 718 N.E.2d 569, 571 (1999). Second, as explained, Judge Ladd was dealing with a more narrow hearsay exception and had to take into consideration respondent's sixth-amendment right to confront witnesses, which he did not have in the neglect proceedings. Third, proceedings under the Juvenile Court Act have a different purpose than criminal proceeding. In proceedings under the Juvenile Court Act, the purpose is "to secure for each minor

subject thereto the care and guidance which will best serve the minor's safety and moral, emotional, mental and physical welfare, and the best interests of the community." *In re Austin W.*, 214 Ill. 2d 31, 43, 823 N.E.2d 572, 580 (2005); 705 ILCS 405/1-2(1) (West 2008). Finally, respondent had the ability to cross-examine Foley and present the recordings of the interview to make the trial court aware of any reliability issues. (We have already addressed his counsel's failure to do so in the previous section.) Accordingly, we find the State did not violate respondent's due-process rights by introducing Foley's testimony about Ch. W.'s statements.

### C. Neglect Finding

Last respondent asserts the trial court erred by finding the minors were neglected.

The State's petition alleged the children were neglected under section 2-3(1)(b) of the Juvenile Court Act (705 ILCS 405/2-3(1)(b) (West 2008)), which provides a neglected minor is "any minor under 18 years of age whose environment is injurious to his or her welfare." Our supreme court has explained the terms "neglect" and "injurious environment" do not have fixed meanings, but rather the meanings vary with the particular case's facts and circumstances. *In re Arthur H.*, 212 Ill. 2d 441, 463, 819 N.E.2d 734, 746-47 (2004). However, courts have interpreted "injurious environment" to include "'the breach of a parent's duty to ensure a safe and nurturing shelter for his or her children.'" (Internal quotation marks omitted.) *Arthur H.*, 212

- 18 -

Ill. 2d at 463, 819 N.E.2d at 747 (quoting *In re N.B.*, 191 Ill. 2d 338, 346, 730 N.E.2d 1086, 1090 (2000)). Cases involving neglect allegations and adjudication of wardship are *sui generis* and thus are decided on the basis of their unique circumstances. *Arthur H.,* 212 Ill. 2d at 463, 819 N.E.2d at 747. The State bears the burden of proving the neglect allegations by a preponderance of the evidence, which means the neglect allegations are more probably true than not. *Arthur H.,* 212 Ill. 2d at 463-64, 819 N.E.2d at 747.

On review, this court will not reverse a trial court's neglect finding unless it is against the manifest weight of the evidence. *Arthur H.,* 212 Ill. 2d at 464, 819 N.E.2d at 747. "A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly evident." *Arthur H.,* 212 Ill. 2d at 464, 819 N.E.2d at 747.

Respondent contends the trial court erred by finding the minor children were neglected because Ch. W.'s statements to Foley were not corroborated as required by section 2-18(4)(c) of the Juvenile Court Act. While section 2-18(4)(c) allows for the admission of the minor's previous statements regarding abuse or neglect allegations, it provides "no such statement, if uncorroborated and not subject to cross-examination, shall be sufficient in itself to support a finding of abuse or neglect." 705 ILCS 405/2-18(4)(c) (West 2008).

We must begin our analysis by examining what the State's petition actually alleged. The State's petition alleged

the minors were neglected because their environment was injurious to their welfare when they resided with respondent in that said environment exposed the minors to risk of sexual abuse. Thus, the State had to prove a risk of sexual abuse to the minors, and not that Ch. W. was sexually abused by respondent.

Investigator Roelfs testified that, during his second interview of respondent, respondent noted a time in which he was slightly aroused by bathing Ch. W. During the interview, respondent also recalled a time when he was in the bathroom with his penis exposed. Ch. W. touched his partially erect penis, and he told her never to do it again. For the first time at the adjudicatory hearing, respondent explained he had incontinence and did not have time to shut the bathroom door. The aforementioned testimony is evidence of the minors being at risk of sexual abuse by respondent, and thus the trial court's finding of neglect was not based solely on Ch. W.'s statements. Since other evidence of neglect as alleged in the petition existed, this case does not present a situation where the minor's hearsay statements alone supported the neglect finding.

Foley's and Investigator Roelfe's testimony was sufficient for the State to prove by a preponderance of the evidence the minors were neglected as alleged in the wardship petition. Accordingly, we conclude the trial court's neglect finding was not against the manifest weight of the evidence.

### III. CONCLUSION

For the reasons stated, we affirm the judgment of the

- 20 -

Champaign County circuit court.

Affirmed.